# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2378
_____

United States of America

*Plaintiff - Appellee*

v.

Jami Walking Bull, also known as Jaime Walking Bull, also known as Jamie Walking Bull

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Western
_____

Submitted: May 14, 2021
Filed: August 10, 2021
_____

Before SMITH, Chief Judge, SHEPHERD and GRASZ, Circuit Judges.
_____

SMITH, Chief Judge.

A jury convicted Jami Walking Bull of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Walking Bull appeals his conviction. He challenges several of the district court's[1] rulings and argues that there

_____

[1]The Honorable Jeffrey L. Viken, Chief Judge, United States District Court for the District of South Dakota.

was insufficient evidence to support the jury's finding that he knew he was a prohibited person within the meaning of 18 U.S.C. § 922(g)(1). We affirm.

## I. *Background*

In April 2019, a Rapid City Police officer was dispatched to a bowling alley following a report of an intoxicated person. On the scene, she encountered Walking Bull, who appeared to be intoxicated and was leaning against a building. While speaking with Walking Bull, the officer performed a records check and learned that there was an active warrant for his arrest. She placed him under arrest and discovered a handgun in his pocket.

The government charged Walking Bull with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Walking Bull had a prior felony conviction in South Dakota for possession of methamphetamine. Walking Bull pleaded guilty to that offense in 2002 and, at his initial sentencing, received a suspended imposition of sentence with credit for time served, plus three years of probation. When his probation was revoked in 2003, the state trial court resentenced him to 4 years' imprisonment, to be suspended on the condition that he serve 180 days in jail, plus an additional 4 years of probation. Walking Bull's probation was revoked again in 2008. The state trial court resentenced him to 4 years' imprisonment, with one year suspended and a credit of 356 days.

Walking Bull's federal trial for the firearm charge was scheduled for October 24, 2019. The district court ordered the parties to provide the court with expert notices and reports by September 13, 2019, and copies of trial exhibits by September 27, 2019.

At the pretrial conference, on October 4, 2019, the government stated that it had provided the defense with all the discovery it had in its possession. On October 14, 2019, the government requested Walking Bull's recorded phone calls from jail.

-2-

The government copied and sent the recordings to the defense on October 17, 2019. Of the 19 calls, the government identified two that it might offer at trial: (1) Exhibit 9, which it would offer only if Walking Bull testified; and (2) Exhibit 10, a call from October 13, 2019, during which Walking Bull said, "I f**ked up, f**ked up, hope I beat it, though." Mot. Hr'g Tr. at 7, *United States v. Walking Bull*, No. 5:19-cr-50067-JLV-1 (D.S.D. 2019), ECF No. 122.

On October 22, 2019, Walking Bull filed a motion in limine to exclude the jail calls. He argued that the government violated its discovery obligations under Federal Rule of Criminal Procedure 16 and that the late disclosure prejudiced his defense. The district court denied the motion. It gave two reasons for its ruling: (1) there was no Rule 16 violation because there was no late disclosure and (2) Walking Bull was not prejudiced because the disclosure occurred "a full week before trial," the "relevant portion[] [was] less than a minute," and the defense did not identify any evidence that it needed to defend against the call but could not access due to the time limitation.[2] *Id.* at 11–12.

On October 22, Walking Bull also filed a notice ("expert notice") stating his intent to call Alecia Fuller as an expert witness. Ms. Fuller is an attorney and public defender in South Dakota. The expert notice stated, in relevant part, that Fuller would testify about "South Dakota state law relevant to government exhibits: . . . Said exhibits contain numerous references to South Dakota Codified Law. [Fuller] will explain the content and force of South Dakota statutes as they pertain to the allegation against Mr. Walking Bull." Def.'s Expert Witness Notice at 1, *United States v. Walking Bull*, No. 5:19-cr-50067-JLV-1 (D.S.D. 2019), ECF No. 54 (emphasis omitted). Walking Bull argued that Fuller's testimony was necessary to show that

---

[2]The court ruled that Exhibit 10 was relevant and admissible as a statement against interest, but it said that it would rule on the admissibility of Exhibit 9 if the government decided to use it at trial. The government did not use Exhibit 9, so only the admission of Exhibit 10 is relevant on appeal.

Walking Bull did not know that he had been convicted of a crime punishable by more than a year of imprisonment, as required for a conviction under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). *United States v. Rehaif*, 139 S. Ct. 2191, 2200 (2019).[3] The district court denied the expert request, explaining:

> We're not going to have a lawyer get on the stand and start explaining the law. . . . When a law is at issue, that's a matter for the Court. . . . I will not have a witness on the stand testifying as to her interpretation of what a statute in the State of South Dakota says.

Mot. Hr'g Tr. at 17.[4]

At trial, the government introduced a certified copy of the South Dakota trial court's 2008 sentencing order, titled "Order Revoking Judgment of Conviction and Order Suspending Execution of Sentence and Entry of Judgment of Conviction and Sentence after Probation Violation" ("State Order"). The State Order revoked Walking Bull's suspended sentence and sentenced him to a term of imprisonment. It stated that Walking Bull "previously pled guilty to . . . possession of a controlled substance, . . . a Class 4 Felony" and "is guilty of possession of a controlled substance, . . . a Class 4 Felony." Appellant's Add. at 29, 30 (emphasis omitted). It ordered that Walking Bull "be sentenced to the South Dakota State Penitentiary . . . for a period of four (4) years, with one (1) year suspended" and that Walking Bull "be

---

[3]In *Rehaif*, the Supreme Court held that a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2) requires the government to prove that the defendant "knew he belonged to the relevant category of persons barred from possessing a firearm." 139 S. Ct. at 2200. Walking Bull's statute of conviction, 18 U.S.C. § 922(g)(1), makes it unlawful for a person to possess a firearm if he "has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."

[4]The district court also noted that the expert notice was late and that it would reject Fuller's testimony on those grounds alone. However, for the purpose of this appeal, we focus our inquiry on the district court's substantive reasoning.

remanded immediately" into custody "for transportation to the South Dakota State Penitentiary." *Id.* at 30. The State Order also noted that Walking Bull "was informed in open court of *the legal maximum time of imprisonment* and the estimated minimum period he must serve before being eligible for parole." *Id.* at 31. After the government introduced the State Order, the district court immediately instructed the jury that, under South Dakota law, "a Class [4] felony is punishable by up to ten years in prison." Trial Tr. vol. 1, at 114, *United States v. Walking Bull*, No. 5:19-cr-50067-JLV-1 (D.S.D. 2019), ECF No. 123.

The government also introduced Exhibit 10, Walking Bull's recorded jail call from October 13, 2019.

The defense introduced a certified copy of Walking Bull's initial sentencing order from 2002, "Order Suspending Imposition of Sentence," which suspended his sentence and placed him on probation with no prison time.

Before the close of trial, Walking Bull requested the following two jury instructions:

> DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 3
> You have heard Mr. Walking Bull previously received an Order Suspending Imposition of Sentence under the laws of the state of South Dakota. You are instructed that such a sentence does not constitute conviction of a crime punishable by imprisonment for a term exceeding one year.

> DEFENDANT'S PROPOSED JURY INSTRUCTION NO. 4
> You have heard Mr. Walking Bull previously received an Order Revoking Judgment of Conviction and Order Suspending Execution of Sentence and Entry of Judgment of Conviction and Sentence after Probation Violation. You are instructed that a person sentenced to the South Dakota State Penitentiary for the first time for a non-violent crime is required to serve one-fourth of the sentence before being eligible for parole or early release.

-5-

Def.'s Proposed Jury Instrs. at 2–3, *United States v. Walking Bull*, No. 5:19-cr-50067-JLV-1 (D.S.D. 2019), ECF No. 65. The district court rejected both, ruling that they were "not relevant to any material issue in the case" and likely to confuse the jury. Trial Tr. vol. 1, at 149.

The jury found Walking Bull guilty of possession of a firearm by a prohibited person under 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Walking Bull timely appealed.

## II. *Discussion*

On appeal, Walking Bull argues that the district court abused its discretion when it denied his motion in limine, excluded Fuller's expert testimony, and rejected his proposed jury instructions. He also claims that there was insufficient evidence to support the jury's finding that he knew he was previously convicted of a crime punishable by more than one year of imprisonment. We address each contention in turn.

### A. *Motion in Limine to Exclude Jail Calls*

First, Walking Bull argues that the district court should have granted his motion in limine to exclude the jail calls because the government violated Federal Rule of Criminal Procedure 16 by failing to promptly disclose the calls.[5] "We review the district court's denial of a motion in limine for abuse of discretion." *United States v. Daniels*, 932 F.3d 1120, 1123 (8th Cir. 2019).

---

[5]Walking Bull also argues for the first time on appeal that the government violated its obligation to disclose any favorable evidence to the defense, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and *United States v. Bagley*, 473 U.S. 667 (1985). *See* Appellant's Br. at 17–18. We note that this argument is not relevant to Walking Bull's case because the jail calls were not favorable evidence—and Walking Bull has never argued that they were. Regardless, Walking Bull "failed to present this argument to the district court, [so] it has been waived on appeal." *Finch v. Payne*, 983 F.3d 973, 983 (8th Cir. 2020).

"Rule 16(a)(1)(B)(i) requires that, upon the defendant's request, the government disclose any relevant written or recorded statement by the defendant if: the statement is within the government's possession, custody, or control; and the attorney for the government knows—or through due diligence could know—that the statement exists." *United States v. Hyles*, 479 F.3d 958, 967 (8th Cir. 2007) (cleaned up). Sanctions for Rule 16 violations can include "prohibit[ing] that party from introducing the undisclosed evidence." Fed. R. Crim. P. 16(d)(2)(C).

We agree with the district court that no Rule 16 violation occurred. Walking Bull has not pointed to any evidence that the government had in its possession but did not promptly disclose. The government requested the calls from the jail on October 14, 2019, and disclosed them to the defense three days later. *Cf. Hyles*, 479 F.3d at 963–64, 967 (finding no abuse of discretion where the district court permitted the government to introduce calls that it obtained three and nine weeks before trial but provided only ten days before trial). According to Walking Bull, the government knew about the calls yet intentionally waited until ten days before trial to obtain them. However, the only call introduced by the government, and thus the only call Walking Bull challenges on appeal, was Exhibit 10, which was made on October 13, 2019—one day before the government requested the calls. Therefore, the government could not have had the call, or known it existed, prior to that date. We find no abuse of discretion in permitting its introduction.[6]

---

[6]Because there was no Rule 16 violation, we need not address the question of sanctions. We note, however, that "[t]he district court has broad discretion in fashioning sanctions for violations of Rule 16. Thus, even if we were to find a violation of Rule 16 in this case, exclusion of the [call] would not necessarily be required." *Hyles*, 479 F.3d at 967 (cleaned up); *see also United States v. Flores-Mireles*, 112 F.3d 337, 340 (8th Cir. 1997) (finding no abuse of discretion where the district court declined to exclude statements despite a Rule 16 violation).

B. *Proposed Expert Witness*

Second, Walking Bull argues that the district court erred when it refused to admit testimony from his proposed expert witness. "We review the district court's decision to admit expert testimony for abuse of discretion, according it substantial deference." *United States v. Moralez*, 808 F.3d 362, 365 (8th Cir. 2015) (cleaned up).

A qualified expert witness may generally testify if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "[H]owever, expert testimony on legal matters is not admissible" because "[m]atters of law are for the trial judge, and it is the judge's job to instruct the jury on them." *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003). Accordingly, a district court may exclude the testimony of an expert if it finds that such testimony constitutes an "impermissible instruction on the law." *United States v. Benton*, 890 F.3d 697, 717 (8th Cir. 2018).

Here, Walking Bull sought to have Fuller testify on matters of law. The expert notice stated that Fuller, a criminal-defense attorney, would "explain the content and force of South Dakota statutes as they pertain to the allegation against Mr. Walking Bull." Def.'s Expert Witness Notice at 1. In other words, she would have explained South Dakota law. Stating that "[w]hen a law is at issue, that's a matter for the

[c]ourt," the district court correctly refused to "have a witness on the stand testifying as to her interpretation of what a statute in the State of South Dakota says." Mot. Hr'g Tr. at 17.

Walking Bull makes no meaningful attempt to dispute that Fuller would have testified strictly on matters of law. In fact, he asserts on appeal that Fuller would have testified about (1) "the unique operations in South Dakota law which allowed for a person to plead guilty to a felony but not be convicted of a felony under [various South Dakota statutes]" and (2) "the operation of parole eligibility in South Dakota." Appellant's Br. at 15.[7] But Walking Bull cites no authority for the use of a legal expert in a case like his. Under our precedent, informing the jury about the law is reserved for the trial judge. *See S. Pine Helicopters, Inc.*, 320 F.3d at 841. Accordingly, the district court did not abuse its discretion.

### C. *Proposed Jury Instructions*

Third, Walking Bull argues that the district court erred when it rejected proposed jury instructions 3 and 4. "We review the rejection of a defendant's proposed instruction for abuse of discretion." *United States v. Shavers*, 955 F.3d 685, 696 (8th Cir. 2020) (citation omitted).

"A defendant is entitled to an instruction explaining his defense theory if the request is timely, the proffered instruction is supported by the evidence, and the instruction correctly states the law." *United States v. Overton*, 971 F.3d 756, 767 (8th

---

[7]Walking Bull also argues that Fuller would have testified that (1) Walking Bull likely never received a copy of the State Order detailing his sentence, *see* Appellant's Br. at 15–16, and (2) the state judge who sentenced Walking Bull was an advocate of restorative justice and that this affected his sentencing protocols, *see id.* at 28–29. However, because Walking Bull did not raise these aspects of Fuller's testimony in the expert notice or during the hearing on the motion, these arguments have been waived on appeal. *See Finch*, 983 F.3d at 983.

Cir. 2020) (citation omitted). But the district court is only obligated to instruct the jury on relevant law: "It is the duty of the trial judge to charge the jury on all essential questions of law, whether requested or not. The instructions should be confined, however, to the issues in the case and pertinent facts developed by the evidence." 2A Charles Alan Wright & Peter J. Henning, *Federal Practice and Procedure* § 485 (4th ed. 2009) (footnote omitted).

Proposed jury instruction 3, which would have told the jury that a suspended imposition of sentence is not a conviction punishable by a term of imprisonment exceeding one year, was irrelevant and not supported by the evidence. Although Walking Bull received a suspended imposition of sentence when he was first sentenced in 2002, that suspended sentence was revoked in 2008. At that point, Walking Bull received a prison sentence exceeding one year of imprisonment. Thus, Walking Bull was not under a suspended imposition of sentence when Officer Vogel found a firearm on him. We agree with the district court that instructing the jury on the meaning of a suspended imposition of sentence, despite the fact that Walking Bull's suspended imposition of sentence was revoked in 2008, would have had no tendency to prove anything of consequence to the actual issues in the case.

Proposed jury instruction 4 was also irrelevant. It would have instructed the jury that when a first-time non-violent offender is sentenced to prison, he is required to serve one-fourth of his sentence before being eligible for parole. But how much time Walking Bull might have served before being eligible for parole was not pertinent to the issues in his case. A conviction under 18 U.S.C. §§ 922(g)(1) and 924(a)(2) does not require the government to prove that a defendant *served* more than a year in prison; rather, under *Rehaif*, the government must prove that he knew "that he had been convicted of a crime *punishable* by imprisonment for a term exceeding one year at the time he possessed the firearms." *United States v. Davies*, 942 F.3d 871, 874 (8th Cir. 2019) (emphasis added).

Relying on *Davies*, Walking Bull contends that a defendant who does not actually serve more than a year in prison might not know his offense was punishable by more than a year of imprisonment. *Davies* is distinguishable, however. There, we held that it was reasonable for the defendant, "after pleading guilty [to felonies], [to] nevertheless think he could possess firearms because he had not yet been sentenced." *Id.* Here, by comparison, Walking Bull had been sentenced multiple times and actually received a prison sentence exceeding one year at the time he possessed a firearm.

## D. *Sufficiency of the Evidence*

Finally, Walking Bull claims that there was insufficient evidence to support the jury's finding that he knew he was convicted of a felony punishable by over a year. "We review a challenge to the sufficiency of the evidence de novo, examining the record in the light most favorable to the verdict, and will reverse 'only if no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt.'" *United States v. Hollingshed*, 940 F.3d 410, 417 (8th Cir. 2019) (quoting *United States v. Coleman*, 584 F.3d 1121, 1125 (8th Cir. 2009)).

"Sufficiency review essentially addresses whether 'the government's case was so lacking that it should not have even been submitted to the jury.'" *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (quoting *Burks v. United States*, 437 U.S. 1, 16 (1978)). "That limited review does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The government had to prove that Walking Bull "knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. In the context of § 922(g)(1), this meant proving that Walking Bull knew he was "convicted in any court of[] a crime punishable by imprisonment for a term

-11-

exceeding one year." The *Rehaif* Court noted that "knowledge can be inferred from circumstantial evidence," 139 S. Ct. at 2198 (citation omitted), and we have previously found that to be the case.[8] As we explained in *Owens*,

> Rational jurors, using reason and common sense in light of their own observations and experiences, could infer beyond a reasonable doubt that a felony conviction would be a significant life event that a person would know about when it happened and remember at a later date. Generally speaking, "it is highly improbable that a person could be convicted of a felony without being aware that his possible sentence would exceed one year's imprisonment."

966 F.3d at 709 (quoting *United States v. Miller*, 954 F.3d 551, 559 (2d Cir. 2020)).

Here, a rational jury could have readily inferred Walking Bull's knowledge from the circumstances. The State Order established that Walking Bull pleaded guilty to a felony, was present at his 2008 sentencing with his attorney, received a sentence of four years in the South Dakota State Penitentiary with one year suspended, and was "informed in open court of the legal maximum time of imprisonment." Appellant's Add. at 31 (emphasis omitted). The district court instructed the jury that the maximum time of imprisonment for his felony was ten years' custody. In light of the fact that

---

[8]*See e.g.*, *United States v. Coleman*, 961 F.3d 1024, 1030 (8th Cir. 2020) (affirming the conviction where "evidence in the record indicate[d] [the defendant] knew he was a convicted felon at the relevant time," including that he was previously sentenced to terms of imprisonment of over a year); *United States v. Welch*, 951 F.3d 901, 907 (8th Cir. 2020) (finding sufficient evidence of knowledge where the defendant had previously "received and served several prison sentences longer than one year for felony convictions"); *United States v. Owens*, 966 F.3d 700, 709 (8th Cir. 2020) (concluding that the parties' stipulation that the defendant had sustained a felony conviction for which he could serve more than a year of imprisonment "was legally sufficient to establish knowledge and sustain the conviction").

he was sentenced to multiple years' imprisonment *and* informed that the maximum sentence was ten years, a rational jury could find it "highly improbable" that Walking Bull would not know that his crime carried a possible sentence of over one year. *See Owens*, 966 F.3d at 709 (quoting *Miller*, 954 F.3d at 559).

Walking Bull's attempts to poke holes in this evidence include arguing that (1) there was no evidence that he ever received a copy of the State Order; (2) "the certificate of service on the [State] Order appears to indicate that only a draft copy of the Proposed Order was ever sent to [his] South Dakota attorney"; (3) the attorney's fees for his court-appointed attorney "imply that . . . Walking Bull received less than two hours of representation on his Initial Appearance, Plea and Sentencing in this case"; and (4) "although [he was] sentenced to the South Dakota State Penitentiary, this was for a minimal time." Appellant's Br. at 31–32. However, the question before us is not whether any juror *could* believe that Walking Bull never saw the order or never knew the details of his felony conviction; we will reverse only if *no* reasonable jury could believe beyond a reasonable doubt that Walking Bull had the requisite knowledge. *See Hollingshed*, 940 F.3d at 417.

There was sufficient evidence for a reasonable jury to believe beyond a reasonable doubt that Walking Bull knew at the time he possessed a firearm that he was a prohibited person—i.e., that he was previously convicted of a crime punishable by more than a year of imprisonment.

### III. *Conclusion*

For the foregoing reasons, we affirm the district court's judgment.

_____