FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
DECEMBER 8, 2022
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 212

State of North Dakota,                                    Plaintiff and Appellee

v.

Steven Ronald Dahl,                                    Defendant and Appellant

## No. 20210276

Appeal from the District Court of Barnes County, Southeast Judicial District, the Honorable Jay A. Schmitz, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Tufte, Justice.

Tonya Duffy, State's Attorney, Valley City, N.D., for plaintiff and appellee.

Scott O. Diamond, Fargo, N.D., for defendant and appellant.

1

**Tufte, Justice.**

[¶1]   Steven Dahl appeals from a criminal judgment entered after a jury found him guilty of two counts of unlawful possession of drug paraphernalia, one of which was for felony possession of paraphernalia. We affirm the misdemeanor conviction, concluding sufficient evidence supported the conviction. We reverse the felony conviction, concluding there was insufficient evidence that the baggies were used, or possessed with intent to be used, for a felony purpose, and remand for entry of a judgment of acquittal on the felony count.

I

[¶2]   Following the execution of a search warrant on a house in Valley City, Dahl was charged with four counts of unlawful possession of drug paraphernalia and one count of theft of property.

[¶3]   At trial, Deputy Josh Magnuson testified he pulled over an individual with a suspended license in the driveway of the Valley City house. The individual told Deputy Magnuson that he was stopping at the house to trade Dahl his unicycle for a bicycle. Dahl was staying at the house and slept on a couch in the living room. After observing a bicycle on the property that matched the description of a bicycle reported stolen, law enforcement obtained a search warrant for the house. Upon searching the house, the officers found numerous bicycles and parts. On a coffee table next to the couch, the officers found a glass pipe and baggies, both containing methamphetamine residue. Officers also found a scale with marijuana residue and a bong on an end table.

[¶4]   After the State rested its case in chief, Dahl moved for an acquittal on all five charges. The district court granted Dahl's motion for acquittal on the bicycle theft charge and denied his motion on the remaining charges. The jury found Dahl not guilty of unlawful possession of the two marijuana-related items (scale and bong) and guilty of unlawful possession of the two methamphetamine-related items (baggies and glass pipe). The judgment

includes a felony conviction for possession of the baggies and a misdemeanor for possession of the glass pipe.

## II

[¶5]   Dahl argues there was insufficient evidence to sustain the jury's verdict. The standard for reviewing a defendant's challenge to the sufficiency of the evidence is well-established:

> When the sufficiency of evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict. When considering insufficiency of the evidence, we will not reweigh conflicting evidence or judge the credibility of witnesses. . . . A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty.

*State v. Nakvinda*, 2011 ND 217, ¶ 12, 807 N.W.2d 204.

[¶6]   Dahl asserts that the evidence does not show he possessed either the baggies or glass pipe. Possession "may be actual or constructive, exclusive or joint and may be shown entirely by circumstantial evidence." *State v. Demarais*, 2009 ND 143, ¶ 8, 770 N.W.2d 246. Constructive possession is proven when the evidence "establishes that the accused had the power and capability to exercise dominion and control" over the controlled substance or paraphernalia. *Id*. (quoting *State v. Morris*, 331 N.W.2d 48, 53 (N.D. 1983)). "Some of the additional circumstances which may support an inference of constructive possession are an accused's presence in the place where a controlled substance is found, his proximity to the place where it is found, and the fact that the controlled substance is found in plain view." *Demarais*, at ¶ 8.

[¶7]   Trial testimony showed that Dahl slept on the couch downstairs, next to the coffee table, while Dahl's roommate lived upstairs. The coffee table had bicycle parts on it, and Dahl's roommate testified the bicycles in the house

belonged to Dahl. The officers found an Eagle 20's Red cigarette pack on the coffee table. Inside of this pack was the glass pipe, which contained methamphetamine residue. Dahl and his roommate both testified that Dahl smoked Eagle 20's Red cigarettes. Dahl's roommate testified he smoked the Eagle 20's Blue cigarettes. Two baggies containing methamphetamine residue were found on the coffee table, one on top of and one next to the Eagle 20's Red cigarette pack. Dahl testified he has smoked methamphetamine. Viewing the evidence in the light most favorable to the verdict, we conclude substantial evidence exists that could allow a jury to draw a reasonable inference that Dahl constructively possessed the glass pipe and baggies.

III

A

[¶8]   Dahl contends there was insufficient evidence that he used or intended to use the baggies for a felony purpose. He asserts the evidence only shows the baggies had an actual or intended use of storing drugs, which is not an enumerated felony use under the statute. Dahl did not make this same insufficiency of the evidence argument when he moved for judgment of acquittal at trial. Rather, he moved for a judgment of acquittal specifically arguing there was insufficient evidence to establish he possessed the paraphernalia.

[¶9]   This Court has concluded that if a motion for judgment of acquittal was made at trial on specified grounds and those grounds did not include the claim on appeal, the defendant does not preserve that issue for review. *State v. Spillum*, 2021 ND 25, ¶ 9, 954 N.W.2d 673; *State v. Helm*, 2020 ND 155, ¶ 7, 946 N.W.2d 503. In *Spillum*, the defendant moved for judgment of acquittal at trial, arguing there was insufficient evidence to establish he possessed certain prohibited materials. 2021 ND 25, ¶ 8. His motion was denied, and the jury found him guilty of possession of certain materials prohibited. *Id.* at ¶ 4. On appeal, he argued there was insufficient evidence of the location of the offense, which was an essential element of the offense. *Id.* at ¶ 5. Relying exclusively on *Helm* for legal support, we concluded that because the defendant moved for judgment of acquittal on specified grounds and those grounds did not include

3

the claim on appeal, he "cannot now raise his argument challenging the sufficiency of the evidence with regard to the location of the offense." *Id.* at ¶¶ 7, 9.

[¶10] *Helm* in turn cites *State v. Yineman* for the requirement that "if the defendant has asserted specific grounds in the trial court as the basis for a motion for acquittal, he or she cannot assert other grounds on appeal." 2020 ND 155, ¶ 6. In *Helm*, we explained this requirement is consistent with how a majority of federal courts of appeal have interpreted Rule 29(a) of the Federal Rules of Criminal Procedure. *Id.*

[¶11] Although seemingly categorical, these two statements that the appellant "cannot now raise" an argument should not be read to foreclose exercise of our discretion to review forfeited errors under the obvious error standard. In *Yineman*, we expressly acknowledged obvious error review when the defendant fails to preserve a claim of insufficient evidence. 2002 ND 145, ¶ 21, 651 N.W.2d 648. Moreover, the majority of the federal cases we cited for support in *Helm* would not have foreclosed review of this issue on appeal. *See United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007) ("Because of [defendant's] forfeiture we review the sufficiency of the evidence under the plain-error doctrine."); *United States v. Daniels*, 930 F.3d 393, 402 (5th Cir. 2019) (concluding that even when the defendant fails to preserve his sufficiency of the evidence argument, the court asks whether there has been a "manifest miscarriage of justice"); *United States v. Chong Lam*, 677 F.3d 190, 200 n.10 (4th Cir. 2012) (acknowledging the "manifest miscarriage of justice" exception); *see also United States v. Spinner*, 152 F.3d 950, 955 (D.C. Cir. 1998) ("[W]e review an appellant's sufficiency-of-the-evidence challenge for plain error when a motion for judgment of acquittal was based on specific (and different) grounds."). To the extent that *Spillum*, 2021 ND 25, *Helm*, 2020 ND 155, or any of our prior case law may be read as foreclosing any review of forfeited challenges to the sufficiency of the evidence for obvious error, we now explain them as declining to exercise our discretion to notice obvious error and reaffirm our general rule that obvious error applies to provide "a narrow exception to the rule that issues may not be raised for the first time on appeal." *State v. Majetic*, 2017 ND 205, ¶ 14, 901 N.W.2d 356; *State v. Tresenriter*, 2012 ND 240, ¶ 12, 823 N.W.2d 774;

*State v. Keller*, 550 N.W.2d 411, 412 (N.D. 1996); *State v. Haverluk*, 432 N.W.2d 871, 874–75 (N.D. 1988) ("[T]he alleged error [elevating offense from class B to class A misdemeanor] is the type which comes within the meaning of Rule 52(b), N.D.R.Crim.P., and may be noticed on appeal even though it was not brought to the attention of the trial court.").

[¶12] While Dahl does not argue this issue is subject to obvious error review on appeal, the State has not argued Dahl failed to preserve this issue for appeal. Although we may decline review of forfeited errors when the appellant fails to argue the obvious error standard, nothing in our cases or rules forecloses our consideration of such errors. *See State v. Edwards*, 2020 ND 200, ¶ 6, 948 N.W.2d 832 (acknowledging "we may review an issue for obvious error even when it has not been argued"); *State v. Rodriguez*, 2020 ND 261, ¶ 13, 952 N.W.2d 233 ("When a party fails to argue obvious error, this Court has discretion whether to consider the issue."). Our rules of procedure reinforce the discretion to review errors that rise to obvious error: "An obvious error or defect that affects substantial rights *may be considered* even though it was not brought to the court's attention." N.D.R.Crim.P. 52(b) (emphasis added). Further, the State did not raise forfeiture or suggest we decline to review Dahl's insufficient evidence claim; thus Dahl was not prompted in his reply brief to argue obvious error or to present an argument that the error was in fact preserved. Accordingly, we review for obvious error. As explained in *Yineman*:

> To establish obvious error under N.D.R.Crim.P. 52(b), the defendant has the burden to show (1) error, (2) that is plain, and (3) that affects substantial rights. We exercise our power to notice obvious error cautiously, and only in exceptional circumstances where the accused has suffered serious injustice. In determining whether there has been obvious error, we examine the entire record and the probable effect of the alleged error in light of all the evidence.

2002 ND 145, ¶ 22. We have said we exercise our discretion "only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Pemberton*, 2019 ND 157, ¶ 9, 930 N.W.2d 125.

5

[¶13] Count three of the amended information charged Dahl with unlawful possession of drug paraphernalia in violation of N.D.C.C. § 19-03.4-03(1), which at the time of the alleged offense provided:

> A person may not use or possess with intent to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, or conceal a controlled substance in violation of chapter 19-03.1. Any person violating this subsection is *guilty of a class C felony* if the drug paraphernalia is used, or possessed with intent to be used, to *manufacture, compound, convert, produce, process, prepare, test, or analyze* a controlled substance, other than marijuana . . . .

N.D.C.C. § 19-03.4-03(1) (effective August 1, 2015) (emphasis added).[1]

[¶14] Section 19-03.4-03, N.D.C.C., was enacted in 2001, replacing the drug paraphernalia laws in the criminal code (title 12.1). *See* 2001 N.D. Sess. Laws ch. 214, §§ 9-10; *State v. Raywalt*, 436 N.W.2d 234, 236-37 (N.D. 1989) (discussing the history of North Dakota's drug paraphernalia laws). Upon enactment in 2001, the entirety of N.D.C.C. § 19-03.4-03 largely read as subsection 1 does above in the 2015 amendment, save two exceptions. The 2001 statute also made it a class C felony to use drug paraphernalia to inject, ingest, or inhale a controlled substance, other than marijuana. 2001 N.D. Sess. Laws ch. 214, § 9. It also had a catchall sentence at the end, stating, "Otherwise, a violation of this section is a class A misdemeanor." *Id.* Thus, drug paraphernalia used, or possessed with an intent to be used, to pack, repack, store, contain, or conceal a controlled substance was a class A misdemeanor under the prior version of the statute.

---

[1] Section 19-03.4-03, N.D.C.C., was amended effective August 1, 2019, and May 3, 2021. *See* 2019 N.D. Sess. Laws ch. 186, § 4; 2021 N.D. Sess. Laws ch. 172, § 7. These amendments are immaterial in this case.

[¶15] In 2015, the Legislative Assembly amended the statute to provide four subsections. 2015 N.D. Sess. Laws ch. 173, § 1. Under subsection 1, it remained a class C felony to use or possess with intent to use paraphernalia to manufacture, compound, convert, produce, process, prepare, test, or analyze a controlled substance, other than marijuana. *Id.* Subsection 2 reduced the penalty to a class A misdemeanor for paraphernalia used to "inject, ingest, inhale, or otherwise induce into the human body a controlled substance, other than marijuana," upon first conviction. *Id.* Subsections 3 and 4 penalized unlawful possession of marijuana-related paraphernalia. *Id.* However, the 2015 amendment did not expressly provide a penalty for paraphernalia used, or possessed with an intent to be used, to pack, repack, store, contain, or conceal a controlled substance, other than marijuana, although the first sentence of subsection 1 still prohibited such activity. *See id.*

[¶16] Dahl argues there is insufficient evidence that the baggies were used, or possessed with intent to be used, for any felony purpose; specifically, to manufacture, compound, convert, produce, process, prepare, test, or analyze a controlled substance. During opening statements, the State told the jury, "During the search law enforcement also found several items of drug paraphernalia . . . including baggies to *store* methamphetamine." (Emphasis added.) Sergeant Nicholas Horner testified the two baggies found measured about "an inch and a half, two inches by another two inches." The State's Attorney and Sergeant Horner had the following discussion regarding the purpose of the baggies:

> Q. Sergeant Horner, going back to your training and experience, do you know, based on that, typically what kind of baggies do people typically store controlled substances? Is it like big bags, small, or something different?

> A. Typically it's small individual baggies. They're not stored in a general container. Big baggies like sandwich baggies are bigger. These were small little what we call a "dime bag" that are small and contain the product individually.

> Q. Okay. And then this seems like an obvious question, but is the purpose of that bag to store the controlled substance?

A. Yes.

Q. Or is it to contain the controlled substance?

A. It's used for storing it. A lot of times that's how it's packaged for individual sale is in that process.

During closing arguments, the State asserted that its position was that the "baggies were used to store or contain methamphetamine."

[¶17] In *State v. Nupdal*, we affirmed a district court order dismissing a felony charge of unlawful possession of drug paraphernalia for lack of probable cause. 2021 ND 200, ¶ 13, 966 N.W.2d 547. The State alleged a scale was used to weigh and package methamphetamine. *Id.* at ¶ 9. A law enforcement officer testified the purpose of the scale was to weigh methamphetamine. *Id.* The district court held weighing and packaging were not felony activities under N.D.C.C. § 19-03.4-03(1). *Id.* at ¶ 10. Affirming the court, we concluded that under the plain language of N.D.C.C. § 19-03.4-03(1), a scale that was alleged and testified to have been used only to weigh and package methamphetamine into smaller quantities did not satisfy one of the eight enumerated felony uses. *Id.* at ¶¶ 1, 11.

[¶18] The State did not respond to Dahl's argument that the evidence of felony use was insufficient, nor point to any evidence in the record that would allow a jury to reasonably infer the baggies were used, or possessed with an intent to be used, for any felony purpose. Sergeant Horner specifically testified the purpose of the baggies was to store the controlled substance, which was consistent with the State's theory of the case. Drug paraphernalia used, or possessed with intent to be used, to store a controlled substance does not satisfy the felony use element under N.D.C.C. § 19-03.4-03(1). On this record, a rational jury could not have found the baggies were used, or possessed with intent to be used, for one of the felony purposes: to manufacture, compound, convert, produce, process, prepare, test, or analyze methamphetamine. Thus, there was insufficient evidence of a felony purpose under N.D.C.C. § 19-03.4-03(1). Because Dahl's felony conviction was supported only by non-felony evidence, it was error satisfying the first element of obvious error review.

[¶19] The next step in applying obvious error review is to determine whether this error was "plain" or "obvious." An error is obvious when it is "a clear deviation from an applicable rule under current law." *Edwards*, 2020 ND 200, ¶ 10. Here, the plain language of the statute permits a felony conviction only for the specified felony uses. *Nupdal*, 2021 ND 200, ¶ 11. Dahl was convicted of a felony without any evidence of one of the specified felony uses. The only evidence of his intended use was directed at containing or storing controlled substances. Neither storing nor containing is a felony use under the statute. In these circumstances, to enter a conviction for a felony when no felony use is supported by the record is a "clear deviation from an applicable rule under current law," which makes it "plain" under our precedent. *Edwards*, at ¶ 10.

[¶20] A conviction based on insufficient evidence implicates constitutional due process and "clearly affects substantial rights and the fairness, reputation, and integrity of the court system." *United States v. Burris*, 999 F.3d 973, 976-78 (6th Cir. 2021) (discussing review of unpreserved insufficient evidence claims under *Jackson v. Virginia*, 443 U.S. 307 (1979)). We conclude entry of a felony conviction without evidence to support an element necessary to make the offense a felony rather than a misdemeanor affects Dahl's substantial rights. *See United States v. Rufai*, 732 F.3d 1175, 1189, 1195 (10th Cir. 2013) (reversing conviction for insufficient evidence under plain error review where defendant made different Rule 29 argument at trial and explaining "conviction in the absence of sufficient evidence of guilt . . . almost always meets the first three factors of plain error review" and "only in a rare case" will the fourth factor concerning fairness, integrity, or public reputation of judicial proceedings not be met). We exercise our discretion to recognize this obvious error, and reverse Dahl's felony conviction.

IV

[¶21] Dahl also argues the jury was erroneously instructed on the felony use element. However, if even a properly instructed jury would have had insufficient evidence on which it could have convicted Dahl of a felony offense, the required remedy upon a conclusion there was insufficient evidence presented at trial is to enter a judgment of acquittal. *State v. McMorrow*, 286

N.W.2d 284, 288-89 (N.D. 1979); *see also Burks v. United States*, 437 U.S. 1, 15-16 (1978); *United States v. Mount*, 161 F.3d 675, 680 n.4 (11th Cir. 1998) ("Given that we have concluded that the record contains insufficient evidence for a properly instructed jury to convict [the defendant] . . . we need not address whether the district court's instruction would have constituted plain error requiring a new trial if the evidence had been sufficient."). "[T]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Tibbs v. Florida*, 457 U.S. 31, 41 (1982) (distinguishing reversal of conviction based on weight of evidence); *see also State v. Anderson*, 480 N.W.2d 727, 730 n.1 (N.D. 1992) ("When the State fails to offer sufficient evidence to sustain a conviction, double jeopardy precludes a retrial."); *State v. Oasheim*, 353 N.W.2d 291, 293 (N.D. 1984) (stating that the Double Jeopardy Clause bars retrial when the court concludes a conviction was based on insufficient evidence). Therefore, we do not address the jury instruction issue.

V

[¶22] We affirm the judgment with respect to the misdemeanor paraphernalia conviction. Because the jury verdict on the felony paraphernalia charge was not supported by sufficient evidence on all essential elements, we reverse the felony conviction and remand for entry of a judgment of acquittal on count three of the amended information.

[¶23] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte

I concur in the result.
Gerald W. VandeWalle

10