# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

---

## 2026 ND 63

---

Bobcat of Mandan, Inc.,                 Plaintiff and Appellee

v.

Doosan Bobcat North America, Inc.,       Defendant and Appellant

---

## No. 20250327

---

Appeal from the District Court of Morton County, South Central Judicial District, the Honorable Bonnie L. Storbakken, Judge.

APPEAL DISMISSED AND REQUEST FOR SUPERVISORY WRIT DENIED.

Opinion of the Court by Bahr, Justice.

Garrett D. Ludwig, Mandan, ND, for plaintiff and appellee.

Michael J. Lockerby (argued) and Jacqueline Beveridge (on brief), Washington, DC, and Timothy Q. Purdon (appeared), Bismarck, ND, for defendant and appellant.

**Bahr, Justice.**

[¶1] Defendant Doosan Bobcat North America, Inc. (Bobcat) appeals from a district court order denying Bobcat's motion to dissolve or modify an automatic stay under N.D.C.C. § 51-07-01.1(3). We dismiss the appeal. We deny Bobcat's request to exercise our supervisory jurisdiction.

I

[¶2] Bobcat of Mandan, Inc. (BM) has been an authorized Bobcat dealer since 1973. BM has operated under a series of dealer sales agreements (DSAs) with the current DSAs effective January 2024. The current DSAs authorize BM to sell and service multiple categories of Bobcat equipment from locations in Mandan and Dickinson, North Dakota.

[¶3] In September 2024, Bobcat issued written notice terminating both DSAs effective December 9, 2024. Bobcat based the termination on its determination BM "made a series of false and misleading statements (including the alteration of business records) about its compliance—or lack thereof—with critical provisions of the Bobcat DSA." Under Section 15.3.E of the DSAs, Bobcat is permitted to terminate the DSAs immediately if the dealer "makes any material written or oral statement or representation which is false or otherwise misleading." Rather than exercise this right to immediate termination, Bobcat provided BM ninety days' notice to afford BM the opportunity to find a buyer for its dealerships.

[¶4] In December 2024, BM filed a complaint challenging the termination and asserting "this action and challenge to Bobcat's notice of termination operates as an automatic stay of the termination during the pendency of this action" under N.D.C.C. § 51-07-01.1(3). The complaint alleged violations of both the farm equipment dealer statute, N.D.C.C. § 51-07-01.1, and the heavy construction equipment franchise termination statute, N.D.C.C. § 51-20.1-03. While BM invoked both statutes, only N.D.C.C. § 51-07-01.1 contains an automatic stay provision. N.D.C.C. § 51-07-01.1(3). The heavy construction equipment statute

provides substantive protections, including a good-cause requirement, burden of proof on the distributor, and availability of damages and injunctive relief, but no automatic stay. N.D.C.C. § 51-20.1-03. BM claimed Bobcat's termination violated statutory prohibitions against terminating dealer contracts without good cause.

[¶5]   In February 2025, Bobcat filed a motion to dissolve or modify the alleged automatic stay. Bobcat argued the automatic stay provision of N.D.C.C. § 51-07-01.1(3) does not apply to the heavy construction equipment that constitutes most products covered by the DSAs. Bobcat conceded that three product categories— articulating tractors, mowers, and turf renovation products—qualify as lawn and garden equipment subject to the automatic stay. Bobcat argued the stay does not extend to construction equipment, such as skid-steer loaders, compact track loaders, compact excavators, and heavy excavators, which Bobcat asserted are governed by the separate heavy construction equipment franchise statute in N.D.C.C. ch. 51-20.1. Bobcat presented evidence that these products are used primarily in construction rather than agriculture. The evidence included industry data from the Association of Equipment Manufacturers, market share data, and BM's own sales reports showing that only 9.3% of BM's equipment sales had an agricultural end-use. Bobcat further relied on the 2017 legislative history of Senate Bill 2289, which amended the farm equipment dealer statute to clarify that equipment must be "designed and used primarily for" agriculture, and during which legislators and industry representatives confirmed that Bobcat equipment was not intended to be covered by the farm equipment dealer statute. 2017 N.D. Sess. Laws ch. 354.

[¶6]   In July 2025, after a hearing, the district court denied Bobcat's motion. The court concluded N.D.C.C. § 51-07-01.1(3) "imposes a mandatory procedural stay upon the filing of an action challenging a dealership termination" and that "Bobcat's arguments do not justify judicial intervention at this preliminary stage." The court characterized Bobcat's contentions regarding which products are covered by the statute as "factual matters that bear on the ultimate merits of BM's claim and are immaterial to the operation of the automatic stay[,]" concluding, "[a]t this juncture, BM's allegations are sufficient to invoke the stay." The court held it lacks authority to modify or dissolve the stay, stating the

2

automatic stay "is imposed by statute, not court order, and requires no judicial balancing or evidentiary showing" and the court "does not have the discretion to amend or dissolve the automatic stay." The court declined to resolve whether Bobcat's equipment qualifies as farm equipment or construction equipment, deferring those determinations to "later stages of litigation" and "resolution by the factfinder."

[¶7]   Bobcat filed a request for certification under N.D.R.Civ.P. 54(b). Prior to the district court addressing Bobcat's request, Bobcat filed a notice of appeal. The court notified the parties it would not address Bobcat's certification request because the court lacks jurisdiction due to Bobcat's appeal.

II

[¶8] BM argues the appeal must be dismissed because the order is not appealable. Bobcat argues the order is appealable under N.D.C.C. § 28-27-02(3) because the automatic stay effectively serves as a temporary restraining order or preliminary injunction. Alternatively, Bobcat argues N.D.R.Civ.P. 54(b) certification is not required because the district court's order affects its fundamental rights making the issue reviewable under this Court's supervisory jurisdiction.

[¶9]   "The right to appeal is purely statutory, and if there is no statutory basis for an appeal, we do not have jurisdiction and we must dismiss the appeal." *Greer v. Global Industries, Inc.*, 2018 ND 206, ¶ 8, 917 N.W.2d 1. "Only judgments constituting a final judgment of the rights of the parties and certain orders specified by statute are appealable." *Id.*

[¶10] This Court uses a two-step analysis to determine whether an order is appealable. *Matter of Est. of Kautzman*, 2025 ND 57, ¶ 11, 19 N.W.3d 272. First, the order appealed from must meet one of the statutory criteria of appealability. *Id.* "If it does not, our inquiry need go no further and the appeal must be dismissed. If it does, then Rule 54(b), N.D.R.Civ.P., if applicable, must be complied with." *Matter of Est. of Lepp*, 2025 ND 216, ¶ 13, 29 N.W.3d 566 (quoting *Dixon v. Dixon*, 2021 ND 94, ¶ 8, 960 N.W.2d 764); *see also Higgins v. Lund*, 2025 ND 47, ¶ 8, 17

3

N.W.3d 828 ("A final judgment, or the equivalent under N.D.R.Civ.P. 54(b), is necessary for appealability.").

A

[¶11] Section 28-27-02(3), N.D.C.C., provides an order is appealable if the order "grants, refuses, modifies, or dissolves an injunction or refuses to modify or dissolve an injunction[.]" Orders granting or dissolving preliminary injunctions and temporary restraining orders are generally appealable under N.D.C.C. § 28-27-02(3). *See Black Gold OilField Servs., LLC v. City of Williston*, 2016 ND 30, ¶ 10, 875 N.W.2d 515 ("An order vacating or dissolving a temporary restraining order after notice and a hearing is an appealable order under N.D.C.C. § 28-27-02(3) and (7)."); *Advanced Bus. Tels., Inc. v. Pro. Data Processing, Inc.*, 359 N.W.2d 365, 367 (N.D. 1984) ("The [temporary restraining] orders appealed from are appealable under § 28-27-02(3), N.D.C.C."); *State ex rel. Olson v. W. R. G. Enters., Inc.*, 314 N.W.2d 842, 844 (N.D. 1982) (holding the court's order denying a preliminary injunction was an appealable order); *Devine v. Fitzpatrick*, 258 N.W.2d 247, 248 (N.D. 1977) (order dissolving temporary restraining order appealable under N.D.C.C. § 28-27-02(3)). Thus, the preliminary issue is whether the district court's order denying Bobcat's motion to dissolve the "automatic stay" under N.D.C.C. § 51-07-01.1(3) is an order refusing to "dissolve an injunction."

[¶12] Statutory interpretation presents a question of law. *Bang v. Cont'l Res., Inc.*, 2025 ND 131, ¶ 55, 23 N.W.3d 895. "Our primary goal in statutory interpretation is to determine the intent of the legislature, and we first look to the plain language of the statute and give each word of the statute its ordinary meaning." *Henry Hill Oil Servs. LLC v. Tufto*, 2023 ND 41, ¶ 10, 987 N.W.2d 314; *see also* N.D.C.C. § 1-02-02. "In construing statutes, we consider the context of the statutes and the purposes for which they were enacted." *State v. McCleary*, 2025 ND 24, ¶ 8, 16 N.W.3d 445 (quoting *State v. Nupdal*, 2021 ND 200, ¶ 5, 966 N.W.2d 547).

[¶13] Section 51-07-01.1(3), N.D.C.C., provides, in relevant part:

4

In any action against a manufacturer, wholesaler, or distributor for violation of this section, the manufacturer, wholesaler, or distributor shall establish that the termination, cancellation, or failure to renew was made in good faith for good cause. *If a notice of termination is issued and the dealer challenges the notice by filing an action, there is an automatic stay during the pendency of the action.*

(Emphasis added.)

[¶14] Section 51-07-01.1(3), N.D.C.C., uses the term "automatic stay," not "injunction," the term used in N.D.C.C. § 28-27-02(3). The "automatic stay" provision was added to N.D.C.C. § 51-07-01.1 in 2005, while injunctions have been included in the appellate jurisdiction statute since statehood. 2005 N.D. Sess. Laws ch. 439, § 1; *compare* N.D.C.C. § 28-27-02(3) *with* Compiled laws of the Territory of Dakota, § 5236 (1887). The term "injunction" has been consistently used in one of two ways. It is often used to mean "[a] court order commanding or preventing an action." *Black's Law Dictionary* 934 (12th ed. 2024); *see also American Heritage Dictionary* 904 (5th ed. 2018) (defining "injunction" as "[a] court order requiring a party to refrain from doing a particular act or to do a particular act."); *Webster's Complete Dictionary of the English Language* 694 (1886) (defining "injunction" as "[a] writ or process . . . whereby a party is required to do or to refrain from doing certain acts"). However, the term "injunction" has also consistently been used to mean "[t]he act or an instance of enjoining." *American Heritage Dictionary* 904; *see also Webster's Complete Dictionary of the English Language* 449 (defining "injunction" as "[t]he act of enjoining or commanding"). The term "enjoin" means to prohibit or forbid. *See American Heritage Dictionary* 592; *Webster's New World Dictionary* 214 (5th ed. 2016); *Webster's Complete Dictionary of the English Language* 694 (defining "enjoin" as "to give a command to; to direct with authority; to order"). Thus, an "injunction" does not have to be by court order.

[¶15] In contrast, a "stay," including an "automatic stay," ordinarily means "postponement or halting of a proceeding" or "[a]n order to suspend all or part of a judicial proceeding or a judgment resulting from that proceeding." *Black's Law Dictionary* 1716; *Merriam-Webster's Dictionary* 1220 (11th ed. 2005) (defining "stay" in this context as "a stopping or suspension of procedure or execution by

5

judicial or executive order"). In short, a stay is generally used to refer to halting an official proceeding, whereas an injunction generally applies to a party to a proceeding.

[¶16] In *Nken v. Holder*, 556 U.S. 418 (2009), the United States Supreme Court addressed the distinction between a stay and an injunction. Acknowledging "a stay might technically be called an injunction," *id.* at 430, the Court noted "[a]n injunction and a stay have typically been understood to serve different purposes." *Id.* at 428. An injunction, the Court explained, "is a means by which a court tells someone what to do or not to do." *Id.* "This is so whether the injunction is preliminary or final; in both contexts, the order is directed at someone, and governs that party's conduct." *Id.* "By contrast," the Court wrote, "instead of directing the conduct of a particular actor, a stay operates upon the judicial proceeding itself. It does so either by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability." *Id.*; *see also Black's Law Dictionary* 1716 (stating a "stay" postpones or halts a proceeding or suspends all or part of a judicial proceeding). "A stay pending appeal certainly has some functional overlap with an injunction, particularly a preliminary one[,]" the Court noted. *Nken*, at 428. "Both can have the practical effect of preventing some action before the legality of that action has been conclusively determined. But a stay achieves this result by temporarily suspending the source of authority to act—the order or judgment in question—not by directing an actor's conduct." *Id.* at 428-29. The Court concluded a stay that relates only to the conduct or progress of litigation before the court is ordinarily not considered an injunction. *Id.* at 429-30. The dissent disagreed, asserting a stay is "a kind of injunction." *Id.* at 441 (Alito, J., dissenting) (quoting *Black's Law Dictionary* 1413 (6th ed. 1990)).

[¶17] The automatic stay in N.D.C.C. § 51-07-01.1(3) serves the purpose of an injunction, not a stay. The automatic stay temporarily suspends a manufacturer, wholesaler, or distributor's termination of a contract with a dealer; it governs the manufacturer, wholesaler, or distributor's conduct by enjoining it from terminating the contract. The automatic stay does not postpone the judicial proceeding.

6

[¶18] Here, the automatic stay temporarily ("during the pendency of the action") prohibits or forbids Bobcat from terminating its DSAs with BM. Because the automatic stay temporarily enjoins, prohibits, or forbids Bobcat from terminating its DSAs with BM, the automatic stay functions as a statutory temporary injunction.

[¶19] Bobcat moved to dissolve the automatic stay, and the district court denied Bobcat's motion. Because the automatic stay functions as a statutory temporary injunction, the district court's order refusing to dissolve the automatic stay is equivalent to an order denying a motion to dissolve a temporary restraining order or preliminary injunction, and falls within the grant of appellate jurisdiction in N.D.C.C. § 28-27-02(3).

B

[¶20] Since the district court's order denying the motion to dissolve is appealable, the next inquiry is whether N.D.R.Civ.P. 54(b) applies. *Matter of Est. of Lepp*, 2025 ND 216, ¶ 13. "Rule 54(b) creates additional requirements by which we enforce our long-standing doctrine against piecemeal appeals." *Matter of Est. of Kish*, 2024 ND 76, ¶ 11, 5 N.W.3d 814. "An important purpose of Rule 54(b), N.D.R.Civ.P., is to 'avoid injustice caused by unnecessary delay in adjudicating the separate claims' caused by piecemeal litigation." *Id.* (quoting *Gast Constr. Co. v. Brighton P'ship*, 422 N.W.2d 389, 390-91 (N.D. 1988)). Rule 54(b) certification is typically required to appeal non-final or interlocutory orders. *See* N.D.R.Civ.P. Rule 54(b), Explanatory Note ("A party seeking to appeal must wait until the end of the case, when all claims have been resolved and final judgment has been entered, before filing an appeal."); *Pinks v. Kelsch*, 2024 ND 15, ¶ 5, 2 N.W.3d 704 (stating Rule 54(b) must be complied with for an interlocutory order to be appealable); *Energy Transfer LP v. N.D. Priv. Investigative & Sec. Bd.*, 2022 ND 84, ¶ 7, 973 N.W.2d 404 ("we must ensure we have jurisdiction when an interlocutory appeal is taken and that the requirements of Rule 54(b) have been met"); *Black Gold OilField Servs.*, 2016 ND 30, ¶ 10 (concluding an order vacating or dissolving a temporary restraining order, despite being an appealable order, was not appealable because there was no N.D.R.Civ.P. 54(b) order); *State v. Hagerty*, 1998 ND 122, ¶ 7, 580 N.W.2d 139 ("To be appealable, an interlocutory

7

order must satisfy one of the criteria specified in N.D.C.C. 28-27-02 and the trial court must certify the appeal under Rule 54(b), N.D.R.Civ.P.").

[¶21] The district court's order denying the motion to dissolve is interlocutory and not reviewable absent certification under N.D.R.Civ.P. 54(b). Here, although Bobcat requested the court grant Rule 54(b) certification, Bobcat filed its appeal before the court addressed the request. Thus, there is no Rule 54(b) certification and the order is not appealable.

III

[¶22] Bobcat requests this Court exercise its supervisory jurisdiction, arguing the district court's order denying the motion to dissolve affects its fundamental rights.

[¶23] We recently explained:

> Under N.D. Const. art. VI, § 2, and N.D.C.C. § 27-02-04, this Court may examine a district court decision by invoking our supervisory authority. We exercise our authority to issue supervisory writs rarely and cautiously, and only to rectify errors and prevent injustice in extraordinary cases when no adequate alternative remedy exists. Our authority to issue a supervisory writ is purely discretionary, and we determine whether to exercise supervisory jurisdiction on a case-by-case basis, considering the unique circumstances of each case. Exercise of supervisory jurisdiction may be warranted when issues of vital concern regarding matters of important public interest are presented.

*Univ. of N.D. v. Whelan*, 2026 ND 19, ¶ 5 (quoting *State v. Lee*, 2025 ND 148, ¶ 6, 25 N.W.3d 763). We have, "in our discretion, exercise[d] our supervisory jurisdiction if the requirements of Rule 54(b) have not been met." *Mitchell v. Sanborn*, 536 N.W.2d 678, 682 (N.D. 1995).

[¶24] Bobcat primarily relies on *Fargo Women's Health Organization, Inc. v. Lambs of Christ*, 488 N.W.2d 401 (N.D. 1992), to support its request this Court exercise its supervisory jurisdiction. *Fargo Women's Health Organization* involved "an appeal from a preliminary injunction." *Id.* at 405. After noting our appealability

8

jurisprudence requires compliance with N.D.R.Civ.P. 54(b), we explained the absence of a Rule 54(b) certification has not "kept us from reviewing 'interim relief [which] affects fundamental interests of the litigants.'" *Id.* at 405-06. The fundamental interests in *Fargo Women's Health Organization* included "fundamental constitutional rights of speech and assembly." *Id.* at 406; *see also Wrigley v. Romanick*, 2023 ND 50, ¶ 11, 988 N.W.2d 231 (exercising supervisory jurisdiction to review district court's issuance of a preliminary injunction in a case contending the legislature exceeded its constitutional authority in regulating abortion, explaining the case presented "an issue of vital concern regarding a matter of important public interest"); *Smith v. Isakson*, 2021 ND 131, ¶ 9, 962 N.W.2d 594 (exercising supervisory jurisdiction to address an issue concerning "a vital constitutional right" to a trial by jury); *Mitchell*, 536 N.W.2d at 683 ("We have exercised our supervisory jurisdiction to consider the constitutionality of statutes[.]").

[¶25] Bobcat has not asserted the district court's order infringes on its constitutional rights. It also has not demonstrated this case presents "an issue of vital concern regarding a matter of important public interest." *Wrigley*, 2023 ND 50, ¶ 11. This case involves a contract dispute between private parties and does not involve public interests. *See City of Mandan v. Strata Corp.*, 2012 ND 173, ¶ 10, 819 N.W.2d 557 (declining to exercise supervisory jurisdiction to address a subrogation claim between private parties). Bobcat has not demonstrated this is an extraordinary case warranting our exercise of discretionary supervisory jurisdiction. *State v. Powley*, 2019 ND 51, ¶ 17, 923 N.W.2d 123 (declining to exercise our supervisory jurisdiction when "the State has not shown why this case is extraordinary"). We decline Bobcat's invitation to exercise our supervisory jurisdiction.

IV

[¶26] We have considered Bobcat's other arguments and conclude they are unnecessary for our decision or are without merit. We dismiss the appeal. We deny Bobcat's request to exercise our supervisory jurisdiction.

[¶27] Lisa Fair McEvers, C.J.
Jerod E. Tufte
Jon J. Jensen
Douglas A. Bahr
Gail Hagerty, S.J.

[¶28] The Honorable Gail Hagerty, S.J., sitting in place of Crothers, J., disqualified.