# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 158

State of North Dakota,                                             Plaintiff and Appellee

    v.

Dayne Russell Watts,                                           Defendant and Appellant

## No. 20230358

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable John A. Thelen, Judge.

AFFIRMED AND REMANDED.

Opinion of the Court by Bahr, Justice.

Rachel R. Egstad, Grand Forks, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**Bahr, Justice.**

[¶1]    Dayne Watts appeals from a criminal judgment after a jury found him guilty of terrorizing, felonious restraint, child neglect, simple assault on fire or emergency personnel, contact by bodily fluids, preventing arrest, and criminal mischief. We conclude Watts failed to establish the definition of "family or household member" in the jury instructions constituted obvious error affecting his substantial rights; there was sufficient evidence to support the child neglect conviction; and Watts failed to show the prosecutor's comments were prosecutorial misconduct constituting obvious error. We affirm the judgment, but we remand for the district court to correct a clerical error in the judgment to reflect Watts was found guilty of the charges after a jury trial, rather than based on guilty pleas.

I

[¶2]    In April 2023, Watts had an altercation with Leah Redeagle, his then girlfriend, in the home the two shared with Redeagle's infant child. Watts was charged with one count of domestic violence, a class C felony; terrorizing, a class C felony; felonious restraint, a class C felony; child neglect, a class C felony; simple assault on fire or emergency personnel, a class C felony; two counts of contact by bodily fluids, class C felonies; preventing arrest, a class C felony; and criminal mischief, a class A misdemeanor.

[¶3]    In October 2023, the district court held a jury trial. Both Redeagle and Watts testified at trial, as did law enforcement officers and medical personnel. The jury acquitted Watts of domestic violence but found him guilty on the remaining charges. The court subsequently held a sentencing hearing and entered a criminal judgment.

II

[¶4]    Watts argues the district court erred in instructing the jury on the definition for "family or household member."

[¶5]    "The district court must instruct the jury on the law; however, the parties must request and object to specific jury instructions." *State v. Hartson*, 2024 ND 78, ¶ 19, 6 N.W.3d 639 (quoting *State v. Jacob*, 2006 ND 246, ¶ 14, 724 N.W.2d 118. "[A] party who objects to an instruction . . . must do so on the record, stating distinctly the matter objected

to and the grounds[.]" N.D.R.Crim.P. 30(c)(1). "When a defendant fails to object to a proposed instruction properly, or fails to specifically request an instruction or object to the omission of an instruction, the issue is not adequately preserved for appellate review and our inquiry is limited under N.D.R.Crim.P. 52(b) to whether the jury instructions constitute obvious error affecting substantial rights." *Hartson,* at ¶ 20; *see also State v. Erickstad,* 2000 ND 202, ¶ 18, 620 N.W.2d 136.

[¶6] Watts did not propose an instruction defining "family or household member." He also failed to object to the district court's proposed instruction defining "family or household member." Watts acknowledges he did not preserve this issue for appeal. He requests we review the instruction for obvious error.

[¶7] "Obvious error review consists of determining whether (1) there was an error, (2) that was plain, and (3) that affected a party's substantial rights." *State v. Gaddie,* 2022 ND 44, ¶ 4, 971 N.W.2d 811; *see also State v. Olander,* 1998 ND 50, ¶ 14, 575 N.W.2d 658. "An error is not obvious unless the defendant demonstrates it is a 'clear or obvious deviation from an applicable legal rule.'" *Gaddie,* at ¶ 4 (quoting *Olander,* at ¶ 15). When a defendant proves obvious error occurred, this Court has discretion "whether to rectify it and will only do so when the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Olander,* at ¶ 16).

[¶8] Section 14-09-22.1, N.D.C.C. provides the offense of "neglect of child." It provides, in relevant part:

> A parent, adult family or *household member*, guardian, or other custodian of any child, who willfully commits any of the following offenses is guilty of a class C felony:
> > 1. Fails to provide proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals.

N.D.C.C. §14-09-22.1 (emphasis added).

[¶9] Regarding the child neglect charge, the district court's jury instructions tracked the language in N.D.C.C. § 14-09-22.1(1), including the use of the term "household member." The second essential element of the offense identified in the instructions is: "The Defendant, Dayne Russell Watts, was the parent, *household member* or other custodian of

Jane Doe, a minor child." (Emphasis added.) In the "definitions" section, the jury instructions defined "family or household member" as:

> *"Family or household member"* means a spouse, family member, former spouse, parent, child, persons related by blood or marriage, persons who are in a dating relationship, persons who are presently residing together or who have resided together in the past, persons who have a child in common regardless of whether they are or have been married or have lived together at any time.

[¶10] Watts argues the jury instructions improperly defined "family or household member" by using the domestic violence definition in N.D.C.C. § 14-07.1-01(4). He argues this definition is "too broad" for child neglect, which is found in N.D.C.C. § 14-09-22.1. Arguing the domestic violence definition of "family or household member" does not apply to section 14-09-22.1, Watts points this Court to N.D.C.C. § 14-09-00.1 (decision-making responsibility) and § 50-25.1-02 (child abuse and neglect) for additional definitions. He contends these definitions are "much narrower" than those in the domestic violence chapter.

[¶11] Watts did not provide to this Court any case law indicating the instructions' definition of "family or household member" clearly deviated from established law. Watts concedes "family or household member" is not defined for N.D.C.C. § 14-09-22.1. Moreover, N.D.C.C. §§ 14-09-00.1 and 50-25.1-02, cited by Watts, do not contain definitions of "family or household member." Watts does not even suggest a definition of "family or household member" for a charge under N.D.C.C. § 14-09-22.1. We conclude Watts failed to establish the district court deviated from established law.

[¶12] Watts did not meet his burden to show the court's jury instructions constitute obvious error.

### III

[¶13] Watts argues there was insufficient evidence to convict him of child neglect. Watts acknowledges he did not preserve this issue, but requests we review it for obvious error. *State v. Dahl*, 2022 ND 212, ¶¶ 9, 11, 982 N.W.2d 580.

[¶14] "To successfully challenge the sufficiency of the evidence on appeal, the defendant must show the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt." *State v. Haney*, 2023 ND 227, ¶ 7, 998 N.W.2d 817

(quoting *State v. Bear*, 2015 ND 36, ¶ 7, 859 N.W.2d 595). This Court will assume the jury believed all evidence supporting a guilty verdict and disbelieved contrary evidence. *Id.* This Court does not reweigh conflicting evidence or judge the witnesses' credibility. *Id.*

[¶15] "A conviction rests upon insufficient evidence only when no rational fact finder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor." *Haney*, 2023 ND 227, ¶ 14 (quoting *Bear*, 2015 ND 36, ¶ 14) "A jury may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty." *Id.* (quoting *Dahl*, 2022 ND 212, ¶ 5).

[¶16] Watts argues the State did not produce evidence he was the minor child's parent, a household member, or a custodian of the child. He also argues he had no "legal obligation" to care for a child that was not his and that had not been left alone in his custody. Watts asserts the child's mother was present all evening and was providing the necessary care for the child.

[¶17] Watts and Redeagle were dating when the altercation occurred. Redeagle testified that when she and Watts dated they lived together with her child. She also testified that when she was in a relationship with Watts, he was one of the child's caregivers and acknowledged the child as his own. Watts also testified that although they had not done a paternity test, he treated and looked at the child as his own. Based on this testimony, when viewed in the light most favorable to the verdict, a rational fact finder could have found Watts was a household member of the child and at least partially responsible to care for the child.

[¶18] Redeagle testified Watts came into her room and hit her multiple times while she was holding the child; that Watts put his hand around her neck and squeezed, that she could barely breathe, and that her child was in her arm lying with her on the bed; and that, while the child was in her arms, Redeagle tried to get off the bed and Watts struck her forehead and nose to the point she was bleeding. Redeagle further testified that Watts grabbed and placed the child outside the bedroom, away from them; that when Watts brought her into the bathroom and told her to clean herself up, the child was outside of the bathroom door crying; and that after Watts let her out of the bathroom, Redeagle picked up the child and ran to the front door, which is when law enforcement entered the home. Based on this testimony, when viewed in the light most favorable to the verdict, a rational fact finder

could have found Watts willfully failed to provide the care necessary for the child's physical, mental, emotional health, or morals.

[¶19] We conclude the evidence presented at trial provided the jury with sufficient evidence to convict Watts of child neglect.

IV

[¶20] Watts argues the prosecutor committed prosecutorial misconduct by improperly commenting on his post-arrest silence. Acknowledging he did not object to the prosecutor's comments (or, more accurately, the prosecutor's questions), Watts requests we review the issue under obvious error.

[¶21] "Improper comment about a defendant's invocation of the right to remain silent is a constitutional error that may be reviewed on appeal even though not raised at trial." *State v. Gaede*, 2007 ND 125, ¶ 18, 736 N.W.2d 418. "When a defendant fails to object to alleged misconduct, we will not reverse unless the misconduct constitutes obvious error." *State v. Vondal*, 2011 ND 186, ¶ 12, 803 N.W.2d 578; *see also State v. Samaniego*, 2022 ND 38, ¶ 16, 970 N.W.2d 222, *as amended* (May 18, 2022) ("When prosecutorial misconduct is raised for the first time on appeal, this Court reviews for obvious error.").

[¶22] "Testimony or argument about a defendant's post-arrest silence may constitute an improper comment about a defendant's invocation of the right to remain silent." *Gaede*, 2007 ND 125, ¶ 18. In *Wickham v. State*, this Court explained:

> "A comment on the defendant's post-arrest silence is an improper comment on the right to remain silent in violation of the Fifth and Fourteenth Amendments of the United States Constitution." *State v. Wilder*, 2018 ND 93, ¶ 5, 909 N.W.2d 684. "[B]ecause the *Miranda* warning carries an implicit 'assurance that silence will carry no penalty,'" a defendant's post-arrest silence cannot be used against him at trial. *Id.* (quoting *Doyle v. Ohio*, 426 U.S. 610, 617-19, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)). Further, the United States Supreme Court extended the prohibition against commenting on a defendant's post-*Miranda* silence to a defendant's post-*Miranda* invocation of the right to counsel. *Wainwright v. Greenfield*, 474 U.S. 284, 295 n.13, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) ("With respect to post-*Miranda* warnings 'silence,' we point out that silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted."). Thus, a *Doyle* violation

also occurs when the prosecutor comments upon a defendant's statement invoking his right to remain silent by requesting an attorney. *Id.*

2022 ND 116, ¶ 6, 974 N.W.2d 646.

[¶23] Watts argues there are four instances where the State improperly questioned him about his "post-arrest silence." Watts's brief refers to his comments as both "post-arrest silence" and "post-*Miranda* silence." The State responds that its questions did not relate to Watts's post-arrest silence. The State asserts all the questions related to what the police officer and Watts discussed "pre-arrest." According to the State, the officer did not place Watts under arrest and give him the *Miranda* warnings until after Watts made his voluntary statements. Watts did not file a reply brief and address whether the identified statements were pre-arrest, or what law applies if the statements were pre-arrest.

[¶24] Watts did not move either before or at trial to suppress his statements made to law enforcement. He also did not object to the State's questions regarding his statements. Because Watts did not move to suppress his statements or object to the State's questions, the district court was not provided an opportunity to make any factual determinations about the circumstances surrounding Watts's statements. The court's factual conclusions are necessary for us to address Watts's allegation of prosecutorial misconduct and obvious error. *See State v. Ritter*, 472 N.W.2d 444, 449 (N.D. 1991) ("Our standard of review on appeal, recognizing the importance of the trial court's opportunity to assess the credibility of witnesses, defers to the factual determinations by the trial court unless those determinations are contrary to the manifest weight of the evidence.").

[¶25] Watts has the burden to establish obvious error. *State v. Studhorse*, 2024 ND 110, ¶ 4, 7 N.W.3d 253. An appellant's failure to raise an issue at the district court may impact the appellant's ability to establish obvious error. For example, in *State v. Potter*, 452 N.W.2d 71, 72 (N.D. 1990), we were asked to address whether the photographic identification procedure rose to the level of obvious error. We explained, "Because no hearing on this issue was ever requested, the question was not focused on by counsel and was not placed before the trial court for findings and conclusions[.]" *Id.* Noting "the question may be close," on the "sparse record," we concluded there was not obvious error. *Id.*; *see also State v. Myers*, 2009 ND 141, ¶ 12, 770 N.W.2d 713 (concluding appellant did not establish obvious error in part because appellant, who did not timely raise the issue below, "did not establish the juror was in fact sleeping"). An appellant's failure to brief the issue may also impact the appellant's ability to establish obvious error. *State v. Sah*, 2020

6

ND 38, ¶ 9, 938 N.W.2d 912 ("The burden to show an obvious error is on the appellant, and when it is not argued, it is difficult for an appellate court to conclude the burden is satisfied.").

[¶26] Because Watts did not raise this issue below, the district court did not have the opportunity to determine when the identified statements were made. Moreover, Watts did not respond factually or legally to the State's arguments the identified statements were made pre-arrest. "We decline to engage in an unassisted search of the record for obvious error without such an argument." *Samaniego*, 2022 ND 38, ¶ 16. On this "sparse record" and briefing, Watts has not satisfied his burden to show the prosecutor's comments constituted prosecutorial misconduct depriving him of a fair trial.

III

[¶27] We affirm the criminal judgment, but we remand for the district court to correct a clerical error in the judgment to reflect Watts was found guilty of the charges after a jury trial, rather than based on guilty pleas. *See* N.D.R.Crim.P. 36 ("After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission."); *State v. Schmidt*, 2011 ND 238, ¶ 18, 807 N.W.2d 593; *State v. Thompson*, 2010 ND 10, ¶ 33, 777 N.W.2d 617.

[¶28]   Jon J. Jensen, C.J.
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte
        Douglas A. Bahr